UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CONSUMER DATA PARTNERS, LP, successor by merger to Data Partnership Group, LP, as Plan Sponsor, AND DATA PARTNERSHIP GROUP, LP HEALTH AND WELFARE BENEFITS PLAN, | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-2110-B |
| AGENTRA LLC, DAVID LINDSEY, INSURETY CAPITAL LLC, and DOES 1 THROUGH 10, | § § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Agentra LLC ("Agentra") and David Lindsey (collectively, "Agentra Defendants")'s Partial Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 76). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

I.

BACKGROUND

This case concerns the alleged mismanagement of employee benefit contributions. Plaintiff Consumer Data Partners, LP ("CDP")'s limited partners collect data, and CDP sells that data to marketing firms. Doc. 73, Am. Compl., ¶ 13. In order to attract more people to its business, CDP established a self-insured group employee health and welfare benefit plan, Plaintiff Data Partnership Group, LP Health and Welfare Benefits Plan ("DPG Plan"). *Id.* ¶ 15. The DPG Plan

is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id*. CDP is the DPG Plan sponsor and thus is a fiduciary under ERISA. *Id*.

In January 2019, "CDP hired Agentra, a benefits administration company, to provide enrollment services for the [DPG Plan]." *Id*. ¶ 19. Under the CDP-Agentra agreement,[1] Agentra was required to create "an online enrollment platform through which independent licensed agents [could] enroll eligible [DPG] Plan participants in the Plan." *See id*. ¶ 20. As part of its enrollment services, Agentra collected DPG Plan participant contributions. *See id*. ¶¶ 15, 20–21. "All [DPG] Plan participant contributions received by Agentra" were to be "deposited in a separate account at a nationally recognized financial institution," before being "transmitted to the Client designated Third Party Administrator within a 45-60 day[] cycle." *Id*. ¶ 20. The CDP-Agentra agreement also prohibited Agentra from "commingl[ing] [DPG] Plan contributions with any other funds or cash accounts of Agentra or any of its other clients." *Id*. In return for its services, Agentra "deduct[ed] its fees from the monthly [DPG] Plan contributions before transmitting the balance to the [Third Party Administrator]." *Id*. ¶ 25.

CDP and the DPG Plan (collectively, "Plaintiffs") allege that, after this agreement was executed, they directed Agentra to transmit all DPG Plan contributions it received, less Agentra's specified Fees, to CDP's licensed third-party administrator (the "TPA"). *Id*. ¶ 21. The TPA was to hold the transmitted DPG Plan contributions as trustee for the benefit of the DPG Plan. *Id*. In that capacity, the TPA used the contributions to pay "medical claims, pharmaceutical claims, as well as other [DPG] Plan vendor fees and costs, all of which are covered by the [DPG] Plan." *Id*. ¶ 23.

---

[1] For the sake of clarity, the Court refers to the agreement between CDP and Agentra as the "CDP-Agentra agreement." However, as the Amended Complaint makes clear, CDP's predecessor in interest, Data Partnership Group, was the entity that actually contracted with Agentra; thus, the Amended Complaint refers to the same agreement as the "DPG-Agentra Agreement." Doc. 73, Am. Compl., ¶ 19.

Plaintiffs claim that Agentra failed to transmit all the required DPG Plan contributions to the TPA. According to Plaintiffs, Agentra "overcharged the [DPG] Plan and, by extension[,] its participants, for its services." *Id.* ¶ 27 (quotations omitted). Plaintiffs further allege that Agentra violated the agreement by delegating its responsibility to collect DPG Plan contribution to the American Workers Insurance Services, Inc. ("AWIS"), an entity owned by Agentra that regularly transferred funds to Agentra and Agentra's owner, Lindsey. *See id.* ¶¶ 31–32, 34, 38, 69–71. Plaintiffs aver that Agentra's relationship with AWIS enabled Agentra to divert further DPG Plan contributions for its own benefit. *See id.* ¶¶ 34–35. Specifically, Plaintiffs claim that AWIS commingled DPG Plan contributions "with other monies paid to AWIS" in a single account, such that the funds transferred by AWIS to Agentra and Lindsey consisted of DPG Plan contributions. *Id.* ¶ 34. Thus, Plaintiffs allege that "Agentra and Lindsey, both directly and through [their] subcontractor AWIS, collected, commingled, mismanaged, and illegally diverted for their own use [DPG] Plan contributions paid by . . . participants." *Id.* ¶ 35.

As a result of their alleged misconduct, Plaintiffs filed suit against the Agentra Defendants, among others, in the United States District Court for the Northern District of Georgia on September 22, 2022. Doc. 1, Compl. The case was transferred to this Court in September 2023. *See* Doc. 54, Order. The operative complaint asserts ten causes of action against the Agentra Defendants, three of which are brought under ERISA, while the remainder are state-law claims. See Doc. 73, Am. Compl., ¶¶ 72–148. The three ERISA claims are brought under 29 U.S.C. § 1132(a)(2); 29 U.S.C. § 1132(a)(3); and for "Violations of ERISA." *Id.* ¶¶ 72–96. The seven state-law claims are: (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Civil Conspiracy;

(4) Fraud and Deceit; (5) Unjust Enrichment; (6) Money Had and Received; and (7) Conversion.[2] *Id.* ¶¶ 97–148.

The Agentra Defendant have moved for partial dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 76, Mot. The Motion is ripe for review. The Court considers it below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2] The Amended Complaint contains two additional Counts: Count XI and Count XII. *See* Doc. 73, Am. Compl., ¶¶ 149–156. Count XI is for "Attorneys' Fees," Count XII is for "Exemplary Damages." *Id.* The Court understands these Counts to be dependent on Plaintiffs' prevailing on one their ten underlying claims identified above.

defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

The Agentra Defendants have moved to dismiss to each state-law claim asserted against them and two of Plaintiffs' ERISA claims. The Court concludes that Plaintiffs' state-law claims are preempted by ERISA and thus should be dismissed. Plaintiffs' remaining ERISA claims, however, are sufficiently pled.

A.      *State Law Claims*

In their operative pleading, Plaintiffs assert seven state-law claims against the Agentra Defendants. Those claims are for: (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Civil Conspiracy; (4) Fraud and Deceit; (5) Unjust Enrichment; (6) Money Had and Received; (7) Conversion. Doc. 73, Am. Compl., ¶¶ 97–148. The Agentra Defendants argue that each of these state-law claims is preempted by ERISA and thus should be dismissed. Doc. 76, Mot., 8–10. Plaintiffs do not dispute that their state-law claims are preempted: "Plaintiffs are not opposing the Agentra Defendants' arguments regarding preemption of Plaintiffs' state law claims (Courts IV-X)." Doc. 82, Resp., 19 n.4. As both parties agree that Plaintiffs' state-law claims cannot proceed, dismissal is warranted. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' state-law claims.

B.      *ERISA § 1132(a)(3) Claim*

Plaintiffs next assert a claim against the Agentra Defendants under § 1132(a)(3) of ERISA. Doc. 73, Am. Compl., ¶¶ 83–89. Section 1132(a)(3) provides: "[a] civil action may be brought . . . (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief . . . to redress such violations . . . ." 29 U.S.C. § 1132(a)(3). Plaintiffs' § 1132(a)(3) claim is premised on the Agentra Defendants' alleged involvement in transactions which were violative of § 1106 of ERISA. 29 U.S.C. § 1106; Doc. 73, Am. Compl., ¶¶ 87–88. As relevant here, § 1106(a)(1)(D) states that "[a] fiduciary . . . shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." Here, Plaintiffs allege that the Agentra Defendants were parties "to prohibited transactions under 29 U.S.C. § 1106, and [are] in wrongful possession of Plan Assets." Doc. 73, Am. Compl., ¶¶ 87–88. As redress, Plaintiffs seek "equitable relief, including restitution and disgorgement" against the Agentra Defendants. *Id*. ¶ 89.

The Agentra Defendants have moved to dismiss Plaintiffs' § 1132(a)(3) claim. Doc. 76, Mot., 3–5.  In their Motion to Dismiss,[3] the Agentra Defendants argue that Plaintiffs' § 1132(a)(3) claim should be dismissed because § 1132(a)(3) only authorizes equitable remedies, and here, the Agentra Defendants maintain, Plaintiffs are seeking legal relief. *Id*.

Section 1132(a)(3) is limited to claims that either seek to enjoin ERISA violations or for "other appropriate equitable relief . . . to redress such violations." 29 U.S.C. § 1132(a)(3). "The Supreme Court has narrowly interpreted the term 'other appropriate equitable relief' to include

---

[3] The Agentra Defendants raised a number of arguments in their Reply brief that were not raised in its initial motion brief. "Arguments raised for the first time in a reply brief are generally waived." *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010). Accordingly, the Court does not consider these arguments here and instead limits its analysis to the argument properly raised.

only 'those categories of relief that were typically available in equity.'" *Cigna Healthcare of Texas, Inc. v. VCare Health Servs., PLLC*, No. 3:20-CV-0077-D, 2020 WL 3545160, at *2 (N.D. Tex. June 29, 2020) (Fitzwater, J.) (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 361 (2006)). "[W]hether the remedy a plaintiff seeks 'is legal or equitable depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought.'" *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016) (alterations omitted) (quoting *Sereboff*, 547 U.S. at 363). Here, there is no dispute that the basis of Plaintiffs' claims—to redress violations of § 1106(a)(1)(D)—is cognizable under § 1132(a)(3). *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000). Thus, the only issue is whether the nature of the relief sought is equitable. The Court concludes that it is.

Plaintiffs seek two remedies for the alleged § 1106 violations: restitution and disgorgement. Doc. 73, Am. Compl., ¶ 89. Restitution can be either a legal or equitable remedy. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) ("In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity."). Restitution at law was available where a plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Id.* (emphasis in original) (quotation omitted). "In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* (emphasis omitted). Thus, "for restitution to lie in equity, the action generally must seek not to

impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.[4]

Here, Plaintiffs seek equitable restitution and disgorgement because they allege that the Agentra Defendants are in possession of specific funds that in good conscience belong to Plaintiffs. Plaintiffs claim that the Agentra Defendants are in wrongful possession of specific property, namely "Plan Assets." Doc. 73, Am. Compl., ¶¶ 87–88. The "Plan Assets" which the Agentra Defendants are allegedly in possession of are the DPG Plan contributions that Agentra was obligated to collect. *See id.* ¶¶ 34–36. Specifically, Plaintiffs allege that that DPG Plan participants paid contributions to Agentra (or one of its subcontractors). *Id.* ¶¶ 20, 65–66. The Agentra Defendants were supposed to transfer these contributions to the TPA; the TPA was then supposed to deposit the transfer "into a segregated trust account maintained by the TPA as trustee . . . for the benefit of [DPG Plan]." *Id.* ¶ 21. However, rather than transfer the DPG Plan contributions to the TPA, the Agentra Defendants allegedly misappropriated these funds for their own personal benefit and "[are] in wrongful possession" of the same. *See id.* ¶¶ 27, 87–88. Taking these allegations as true, Plaintiffs allege that Agentra Defendants are in wrongful possession of particular property—the DPG Plan contributions—and they assert a claim to that particular property. As Plaintiffs seek recovery of particular property, as opposed to recovery from the Agentra Defendants' general

---

[4] Where a defendant transferred the particular property to another, disgorgement was an alternative to equitable restitution in that it allowed a plaintiff to recover proceeds from that transfer. *See Harris Tr. & Sav. Bank*, 530 U.S. at 250 ("[I]t has long been settled that when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom." (citations omitted)).

assets, the Court concludes that they have stated a claim for equitable relief. *See Knudson*, 534 U.S. at 214; *see also Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547 (7th Cir. 2003) ("[Equitable] relief includes not just an injunction but also the imposition of a constructive trust on money claimed to be wrongfully withheld from the plaintiff.").

The Agentra Defendants, however, argue that the relief sought is legal because Plaintiffs did not "'allege that any of the funds it seeks are specifically identifiable . . . and/or separate and distinct from [the Agentra Defendants] general assets." Doc. 76, Mot., 4 (alterations in original) (citing *Cigna Healthcare*, 2020 WL 3545160, at *3). While the Agentra Defendants offer an altered quote from *Cigna Healthcare* in support of their position, the full quote from that case cuts against them: "[The] complaint does not allege that any of the funds it seeks are specifically identifiable, *within Defendants' possession or control*, and/or separate and distinct from Defendants' general assets[.]" 2020 WL 3545160, at *3 (emphasis added). Here, Plaintiffs have specifically alleged that the Agentra Defendants are in possession of Plan Assets; thus, *Cinga Healthcare* is distinguishable.

The Agentra Defendants also argue that the relief sought by Plaintiffs is legal because "nowhere in the Amended Complaint do Plaintiffs assert an ownership interest in the 'Plan Assets.'" Doc. 76, Mot., 5. The Court disagrees. According to the Amended Complaint, had the Agentra Defendants transferred the DPG Plan contributions to the TPA, the TPA would have held those funds in trust for the benefit of Plaintiffs. *See* Doc. 73, Am. Compl., ¶ 21. And Plaintiffs, as beneficiaries of the trust maintained by the TPA, would have held equitable title to the corpus of that truest—i.e., the DPG contributions. *See Welch v. Davidson*, 102 F.2d 100, 102 (1st Cir. 1939) ("It must be conceded that in equity the beneficiary of a trust is the owner of the trust res."); Restatement (First) of Restitution § 160 (1937) ("[I]n the case . . . of a constructive trust one person holds the title to property subject to an equitable duty to hold the property for or to convey

it to another, and the latter has in each case some kind of an equitable interest in the property."). If Plaintiffs would have held equitable title absent the alleged malfeasance of the Agentra Defendants, it follows that Plaintiffs are, "in the eyes of equity, the true owners" of the contributions notwithstanding bad acts allegedly committed by the Agentra Defendants. *See Knudson*, 534 U.S. at 213. Thus, Plaintiffs have alleged a sufficient interest in the property in the Agentra Defendants' possession.

In sum, the Court concludes that Plaintiffs seek equitable relief. Accordingly, the Court **DENIES** the Agentra Defendants' Motion to Dismiss as to Plaintiffs' § 1132(a)(3) claim.

C.   *Group Pleading*

The Agentra Defendants lastly move to dismiss Plaintiffs' claims under § 1132(a)(2) of ERISA for improper group pleading.[5]  Doc. 76, Mot., 5–8. The Court disagrees that the Amended Complaint contains impermissible group pleading.

While "[g]eneral allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability against any individual defendant," *See Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021), "assertions against all defendants are proper when

---

[5] It was not entirely clear to the Court which claims the Agentra Defendants thought to be improperly group pled. The Agentra Defendants argue that "most of [Plaintiffs'] cause [sic] of action" rely on impermissible group pleading and thus "*those* claims[3] should be dismissed for failing to state a claim." Doc. 76, Mot. 7–8 (footnote in original). Footnote three of the Agentra Defendants brief states, "*See* supra note 3." *Id.* at 8 n.3. It is possible that the Agentra Defendants intended to refer the Court to footnote 2, which lists the following claims: "29 U.S.C. 1132(a)(2) and breach of fiduciary duty, breach of contract, civil conspiracy, fraud and deceit, unjust enrichment, money had and received, and conversion claims." *Id.* at 6 n.2. However, in their Reply, the Agentra Defendants contend that the allegations pertaining to "Counts II-XII," which is every claim but the § 1132(a)(2), contain improper group pleading. Doc. 86, Reply, 10.

accompanied . . . by individualized factual allegations." *Centennial Bank v. Holmes*, No. 5:23-CV-044-H, 2024 WL 733649, at *16 (N.D. Tex. Feb. 20, 2024) (Hendrix, J.). Here, the Amended Complaint contains sufficient individualized factual allegations to justify the limited use of allegations against all Defendants.

While the Agentra Defendants argue otherwise, they fail to acknowledge the extensive factual allegations that precede those allegations which they claim constitute improper group pleading. For instance, Agentra Defendants challenge Plaintiffs' allegation that the "terms of the [CDP-Agentra] Agreement and ERISA prohibited the actions by Defendants." Doc. 73, Am. Compl., ¶¶ 73, 84; *see* Doc. 76, Mot., 7. They argue this allegation constitutes impermissible group pleading because Plaintiffs do not specify "each Defendant's specific prohibited actions or how those actions by each Defendant violated unspecified 'terms' to give rise to liability under 29 U.S.C. 1132(a)(2)." Doc. 76, Mot., 7. But elsewhere in the Amended Complaint, Plaintiffs provide the very specification for which the Agentra Defendants ask. With respect to how the Agentra Defendants violated the CDP-Agentra Agreement, Plaintiffs first allege that "[t]he [CDP]-Agentra Agreement forbade Agentra's commingling of any [DPG] Plan contributions with any other funds or cash accounts of Agentra or any of its other clients," *id.* ¶ 29, and then allege that, "in direct violation of the contractual obligations to CDP . . . , Agentra and Mr. Lindsey . . . commingled, mismanaged, and illegally diverted for their own use [DPG] Plan contributions paid by plan participants." *Id.* ¶ 35. And with respect to how the Agentra Defendants' violations gave rise to liability for breach of their fiduciary duties under ERISA, Plaintiffs allege: "Defendants Agentra and Mr. Lindsey breached their fiduciary duties pursuant to ERISA . . . by commingling, misappropriating, mismanaging, diverting for their own use, self-dealing, and otherwise failing to

remit funds owed to the TPA for use to fund covered claims under the group health plan." Doc. 73, Am. Compl., ¶ 99.

While the Agentra Defendants object to two other allegations as containing improper group pleading, *see* Doc. 76, Mot., 6–7, the Court finds these objections similarly deficient. Accordingly, the Agentra Defendants' Motion is **DENIED** to the extent it argues that any claim should be dismissed for improper group pleading.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** the Agentra Defendants' Motion to Dismiss (Doc. 76). The Court **GRANTS** the Motion as to Plaintiffs' state-law claims and thus **DISMISSES WITH PREJUDICE** Plaintiffs' claims against the Agentra Defendants for: (1) Breach of Fiduciary Duty; (2) Breach of Contract; (3) Civil Conspiracy; (4) Fraud and Deceit; (5) Unjust Enrichment; (6) Money Had and Received; and (7) Conversion. The Agentra Defendants' Motion is **DENIED** in all other respects.

SO ORDERED.

SIGNED: August 28, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE